IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | |
|---|---|
| KEVIAS JACKSON,<br><br>　　　Plaintiff,<br><br>　　v.<br><br>WARDEN TREVONZA BOBBITT, et al.,<br><br>　　　Defendants. | CIVIL ACTION NO.: 6:23-cv-12 |

**REPORT AND RECOMMENDATION**

Plaintiff filed this action, asserting claims under 42 U.S.C. § 1983. Docs. 1, 9. The Court has conducted a frivolity screening under 28 U.S.C. § 1915A. For the reasons stated below, I **RECOMMEND** the Court **DISMISS** the following portions of Plaintiff's Complaint: all claims against Defendants Shuemaker, Majette, Johnson, Fales, Law, Winchell, Granch, Martin, C. Jones, Cooper, Thomas, Riley, Barber, Y. Jones, Bobbitt, and White. However, I **FIND** that some of Plaintiff's claims may proceed. Specifically, the Court will direct service of the following claims by separate Order: claims for deliberate indifference to a medical need asserted against Defendants Cheney, Hernandez, Murray, and Bowen.

**PLAINTIFF'S CLAIMS**[1]

Plaintiff is currently an inmate at Ware State Prison in Waycross, Georgia. Doc. 7. However, the incidents relevant to his Complaint occurred while he was housed at Georgia State Prison ("GSP"), Coastal State Prison ("CSP") and Telfair State Prison ("TSP"). Doc. 1 at 5–15.

---

[1] All allegations set forth here are taken from Plaintiff's Complaint and his Amended Complaint, which the Court construes as a supplement to his original Complaint. Docs. 1, 9. During frivolity review

On October 18, 2019, Plaintiff was located in his cell on administrative segregation at GSP when Defendant Shuemaker escorted Plaintiff's cellmate back inside the cell. Id. at 5. Plaintiff told Defendant Shuemaker that Plaintiff and his cellmate had not received the special diet meals they were supposed to receive. Id. Plaintiff states Defendant Shuemaker got angry and Plaintiff pushed a corner of his mattress through the door flap to attempt to block any mace or guns. Id. Defendant Shuemaker then called Defendant Johnson over to Plaintiff's cell door. Id. at 6. The situation escalated, eventually leading to Defendant Johnson attempting to break Plaintiff's hand that was sticking out of the tray flap of the door. Id. Defendant Johnson called Defendant Majette over to assist him in breaking Plaintiff's arm. Id. Plaintiff managed to get free from Defendants Majette and Johnson. Id. He placed his other hand outside the top door flap. Id. Defendant Shuemaker slammed the door flap on Plaintiff's fingers. Id. at 6–7.

Plaintiff states Defendant Johnson then realized the seriousness of Plaintiff's injuries and began giving orders to complete procedures required when an inmate is injured. Id. at 7. Defendant Shuemaker continued to threaten Plaintiff and his cellmate until Defendant Johnson convinced Defendant Shuemaker to walk away. Id. Plaintiff had deep cuts on the fingers of his right hand, as well as swelling and a numb feeling. Id. Plaintiff told Defendant Johnson about this and informed Johnson he needed medical attention. Id.

Three hours later, Defendant Johnson brought Defendant Fales to the dormitory to treat an inmate in another cell. Id. Plaintiff states he called for help while Johnson and Fales were helping a different inmate. Id. Plaintiff states Defendant Fales performed a cursory examination of the injury but refused to take him to the medical department to receive care. Id. The next day,

---

under 28 U.S.C. § 1915A, "[t]he complaint's factual allegations must be accepted as true." Waldman v. Conway, 871 F.3d 1283, 1289 (11th Cir. 2017).

after another officer noticed Plaintiff's hand was the size of a softball, Plaintiff was transferred to a hospital. Id. at 8.

While at the hospital, Plaintiff states Defendant Law performed an x-ray on Plaintiff's hand but could not get accurate readings due to the swelling in his hand. Id. Defendant Law recommended Plaintiff get another x-ray taken after the swelling in his hand decreased. Id. Approximately five days later, Defendant Winchell took an x-ray of Plaintiff's hand. Id. Plaintiff alleges this x-ray was "false" and, as a result, medical treatment never took place.[2] Id. Defendants Cooper and C. Jones were staff members of the medical department at GSP who were aware of Plaintiff's issues with his right hand but never followed up on whether he received treatment. Id.

For the next year, Plaintiff spoke to and saw multiple medical-provider Defendants for treatment, including Defendants Winchell, Granch, Martin, C. Jones, Cooper, Thomas, Riley, Barber, and Y. Jones. Id. at 8–11. However, Defendants either did not take Plaintiff's concerns seriously or gave Plaintiff inadequate medical treatment, which did not resolve his pain. Id.

At some point in 2021, Plaintiff was transferred to TSP. Id. at 11. On June 1, 2021, Plaintiff filed a sick call request to seek treatment for his right hand. Id. On June 17, 2021, Plaintiff received a consult with Defendant Cheney, who recommended Plaintiff have an appointment to see an orthopedic surgeon. Id.

Plaintiff was shuffled back and forth between Defendants Cheney and Hernandez for appointments, who were located at TSP and GSP respectively, for several months. Id. at 11–12. Plaintiff asserts these Defendants failed to communicate properly with one another and he still

---

[2] Plaintiff repeatedly states his treatment "was falsified." See, e.g., Doc. 1 at 13. At times, Plaintiff appears to contend documents were falsified, and other times, he appears to allege actual tests or scans were entirely faked. Plaintiff's allegations are ambiguous in this regard.

3

did not receive appropriate treatment for his hand. Id. at 11–12. After filing two grievances about the matter, Plaintiff was sent for an MRI at Augusta State Medical Prison on December 20, 2021. Id. at 13. Once Plaintiff was returned to TSP, he asked Defendant Murray for follow-up on that MRI. Id. Defendant Murray informed Plaintiff the MRI showed there was nothing wrong with his hand. Id.

On April 18, 2022, Plaintiff was sent for a consult with Defendant Bowen, an orthopedic surgeon at CSP. Id. Defendant Bowen informed Plaintiff he had a "4th broken finger."[3] Id. Plaintiff state he was not aware he had any broken fingers before Defendant Bowen informed him. Id. That same day, when he was sent back to TSP, Plaintiff was sent to Defendant Cheney for follow-up treatment. Id. Plaintiff, however, did not ultimately receive any treatment. Id.

Plaintiff also alleges, in general terms, Defendants Bobbitt and White retaliated against him by "false documenting" and forging his grievances. Doc. 9 at 2. This action allegedly resulted in a criminal investigation by the Department of Corrections ("DOC").[4] Id.

## STANDARD OF REVIEW

A federal court is required to conduct an initial screening of all complaints filed by prisoners and plaintiffs proceeding *in forma pauperis*. 28 U.S.C. §§ 1915A(a), 1915(a). During the initial screening, the court must identify any cognizable claims in the complaint. 28 U.S.C. § 1915A(b). Additionally, the court must dismiss the complaint (or any portion of the complaint) that is frivolous, malicious, fails to state a claim upon which relief may be granted, or which seeks monetary relief from a defendant who is immune from such relief. Id. The pleadings of unrepresented parties are held to a less stringent standard than those drafted by

---

[3] Presumably, Plaintiff means the fourth finger on his right hand was broken.

[4] It is not clear when this alleged forging of grievances happened. It is also unclear who the DOC was criminally investigating.

attorneys and, therefore, must be liberally construed.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  However, Plaintiff's unrepresented status will not excuse mistakes regarding procedural rules.  McNeil v. United States, 508 U.S. 106, 113 (1993).

A claim is frivolous under § 1915(e)(2)(B)(i) if it is "without arguable merit either in law or fact."  Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006).  In order to state a claim upon which relief may be granted, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  To state a claim, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice.  Twombly, 550 U.S. at 555.

## DISCUSSION

### I.    The Statute of Limitations Bars Some of Plaintiff's Claims

Plaintiff's claims against Defendants Shuemaker, Majette, Johnson, Fales, Law, Winchell, Granch, Martin, C. Jones, Cooper, Thomas, Riley, Barber, and Y. Jones are barred by the applicable statute of limitations.  Constitutional claims brought pursuant to § 1983 "are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought."  Powell v. Thomas, 643 F.3d 1300, 1303 (11th Cir. 2011).  Georgia has a two-year statute of limitations for personal injury actions.  O.C.G.A. § 9-3-33.  Although state law determines the applicable statute of limitations, "[f]ederal law determines when the statute of limitations begins to run."  Lovett v. Ray, 327 F.3d 1181, 1182 (11th Cir. 2003).

Generally, "the statute of limitations does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably

prudent regard for his rights." Id. "The statute of limitations for claims brought under § 1983 begins to run when facts supporting the cause of action are or should be reasonably apparent to the claimant." Johnson v. County of Paulding, 780 F. App'x 796, 798 (11th Cir. 2019) (citing Brown v. Ga. Bd. of Pardons & Paroles, 335 F.3d 1259, 1261 (11th Cir. 2003)).

Plaintiff explains Defendants Shuemaker, Majette, and Johnson were all involved in the altercation that caused the injury to his hand. Doc. 1 at 5–7. This altercation occurred on October 18, 2019, over three years before Plaintiff filed the instant Complaint. Doc. 1 at 5. Plaintiff would have reasonably been aware of the violation of his Eighth Amendment rights immediately after the altercation occurred and, thus, the statute of limitations would have begun to run the day after the incident occurred.

As to the claims for deliberate indifference to a serious medical need against Defendants Fales, Law, Winchell, Granch, Martin, C. Jones, Cooper, Thomas, Riley, Barber, and Y. Jones, Plaintiff states each Defendant failed to appropriately diagnose and treat his injured hand from approximately October 2019 until July 2020. Doc. 1 at 8–11. The Complaint is clear Plaintiff was aware of any alleged deficiency in the treatment at the time of the respective appointments with these Defendants. Plaintiff filed several grievances about the alleged deficient care almost immediately after the appointments. See, e.g., Doc 1 at 8 (stating Plaintiff filed multiple grievances shortly after the October 19, 2019 doctor's appointment). Plaintiff was aware of any deliberate indifference claims against Defendants Fales, Law, Winchell, Granch, Martin, C. Jones, Cooper, Thomas, Riley, Barber, and Y. Jones as soon as Plaintiff realized he was receiving deficient treatment. Absent any basis for tolling, Plaintiff's claim is barred by the statute of limitations.

There is no apparent basis for tolling Plaintiff's claim.  See Bridgewater v. DeKalb County, No. 1:10-cv-1082, 2010 WL 11507266, at *6–8 (N.D. Ga. July 12, 2010) (providing a discussion on the tolling provisions available under Georgia and federal law).  Georgia law provides the limitations period may be tolled in the following circumstances: (1) the party is legally incompetent, O.C.G.A. § 9-3-90; (2) the person becomes legally incompetent after the right accrues, O.C.G.A. § 9-3-91; (3) an estate becomes unrepresented, O.C.G.A. §§ 9-3-92, 9-3-93; (4) the defendant is absent from the State, O.C.G.A. § 9-3-94; (5) one party in a joint action is legally incompetent, O.C.G.A. § 9-3-95; (6) there is fraud by the defendant, O.C.G.A. 9-3-36; (7) there are counterclaims and cross claims, O.C.G.A. § 9-3-37; (8) the party is bringing a medical malpractice claim, O.C.G.A. § 9-3-97.1; (9) a tort arises from a crime, O.C.G.A. § 9-3-99; and (10) there is a non-statutory basis for equitable tolling.  Bridgewater, 2010 WL 11507266, at *6 (citing State v. Private Truck Council, Inc., 371 S.Ed.2d 378, 380–81 (Ga. 1988)).

Additionally, there is no basis for non-statutory equitable tolling in this case.  "Georgia's non-statutory doctrine of equitable tolling is extremely narrow," and the only discussion of non-statutory equitable tolling in the Georgia courts is in the context of a class action lawsuit. Bridgewater, 2010 WL 11507266, at *7 (citing Hicks v. City of Savannah, No. 4:08-cv-06, 2008 WL 2677128, *2 (S.D. Ga. July 8, 2008), and Private Truck Council of Am., Inc., 371 S.E.2d at 380)).  Because Plaintiff brings a § 1983 claim and not a class action, the claim is not tolled under Georgia's non-statutory equitable tolling.  See id. at *7 (holding same).  Thus, I **RECOMMEND** the Court **DISMISS** all claims against Defendants Shuemaker, Majette, Johnson, Fales, Law, Winchell, Granch, Martin, C. Jones, Cooper, Thomas, Riley, Barber, and Y. Jones.

II.     **Plaintiff Fails to State a Claim as to Defendants Bobbitt and White**

Plaintiff lists Defendants Bobbitt and White as Defendants but only asserts those Defendants retaliated against him by "forging his grievances."  Doc. 9 at 2.  The Eleventh Circuit Court of Appeals has held a district court properly dismisses a defendant where a plaintiff fails to state any allegations that associate the defendant with the purported constitutional violation.  Douglas v. Yates, 535 F.3d 1316, 1321–22 (11th Cir. 2008) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong.").  As to Defendants Bobbitt and White, Plaintiff fails to describe what "forging grievances" means or how this was retaliation against Plaintiff.  Accordingly, I **RECOMMEND** the Court **DISMISS** claims against Defendants Bobbitt and White.

To the extent Plaintiff seeks to hold Defendants Bobbitt and White liable for the acts of their subordinates without alleging any personal involvement, his claim also fails.  "It is well established in this circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."  Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (citations omitted).  To hold a supervisory official or an employer liable, Plaintiff must demonstrate either (1) the supervisor actually participated in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor and the alleged constitutional violation.  Id. (internal quotation marks and citation omitted) (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)).  As noted above, Plaintiff has not alleged Defendants Bobbitt and White participated in the events forming the basis of any of Plaintiff's claims.  Moreover, Plaintiff has not proffered

any reason to support the conclusion Defendants Bobbitt and White violated any of Plaintiff's constitutional rights.

Similarly, Plaintiff fails to allege a "causal connection" between Bobbitt and White and the asserted constitutional violations. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse puts the responsible supervisor [or employer] on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's [or employer's] improper custom or policy . . . result[s] in deliberate indifference to constitutional rights." Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003), abrogated in part on other grounds by Randall v. Scott, 610 F.3d 701 (11th Cir. 2010). Plaintiff has not made the necessary showing with respect to Defendants Bobbitt and White. Accordingly, I **RECOMMEND** the Court **DISMISS** the claims against Defendants Bobbitt and White.

## CONCLUSION

For the reasons set forth above, I **RECOMMEND** the Court **DISMISS** the following portions of Plaintiff's Complaint: all claims against Defendants Shuemaker, Majette, Johnson, Fales, Law, Winchell, Granch, Martin, C. Jones, Cooper, Thomas, Riley, Barber, Y. Jones, Bobbitt, and White. However, I **FIND** that some of Plaintiff's claims may proceed. Specifically, the Court will direct service of the following claims by separate Order: deliberate

indifference to a medical need claims against Defendants Cheney, Hernandez, Murray, and Bowen.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); <u>Harrigan v. Metro Dade Police Dep't Station #4</u>, 977 F.3d 1185, 1192–93 (11th Cir. 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. <u>Harrigan</u>, 977 F.3d at 1192–93; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 16th day of October, 2023.

_/s/ B. Cheesbro_
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA